UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| VICTOR MANUEL RIBAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:24-cv-00632 |
| | ) | |
| MEGAN BESLER, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT MEGAN BESLER'S MEMORANDUM IN SUPPORT OF MOTION FOR MISCELLANEOUS RELIEF AND/OR SANCTIONS**

COMES NOW Defendant Megan Besler, by and through her undersigned counsel, and submits this Memorandum in Support of her Motion for Miscellaneous Relief and/or Sanctions.

## INTRODUCTION

This matter arises from Plaintiff's repeated and abusive litigation tactics designed to harass Defendant and delay the inevitable dismissal of his meritless claims. Plaintiff prevented resolution of this action by failing to follow this Court's order to return to mediation and instead filed a new lawsuit against Defendant.

Plaintiff's multiple lawsuits, coupled with his failure to prosecute this action, cause unnecessary prejudice, delay, and expense. This behavior is unwarranted and has no place in any courthouse. Therefore, Defendant respectfully requests that the Court dismiss Plaintiff's action with prejudice, award attorney's fees to Defendant, and grant such further relief as the Court deems just and proper under these circumstances.

**I.    BACKGROUND**

Plaintiff failed to prosecute this action, *Ribas v. Besler*, Cause Number 4:24-cv-00632 SPM (E.D. Mo.) ("*Ribas 1*") in good faith. Plaintiff initiated litigation in April 2024 by filing *Ribas 1* in

1

state court, which Defendant promptly removed to federal court. Over the following months, Plaintiff repeatedly sought extensions before filing an amended complaint, after which the Court entered a case management order and referred the matter to mediation. The parties selected a neutral and reported a settlement in December 2024, memorialized in a Memorandum of Understanding ("MOU") (attached herein as Exhibit A). However, when Plaintiff later attempted to re-negotiate the agreed terms while drafting the formal settlement, Defendant objected stating she would file a motion to enforce settlement, but instead Plaintiff quickly filed his own suggesting the parties return to mediation.[1] Defendant filed a response to Plaintiff's motion and reluctantly agreed to return to mediation.[2] See also Declaration of Ryan Keane, attached hereto as Exhibit B. The Court granted Plaintiff's request and directed the parties back to mediation.

Rather than proceed as ordered by this Court, Plaintiff filed a second action in the Circuit Court of St. Louis City, State of Missouri, *Ribas v. Besler*, Cause No. 4:25-cv-00570-CDP (E.D. Mo.) ("*Ribas 2*"), bringing additional causes of action that were previously resolved at mediation.[3]

Moreover, for several months following, Plaintiff consistently disregarded Defense counsel's efforts to schedule mediation. Despite multiple inquiries, Plaintiff's counsel failed to provide availability and did not respond to repeated attempts at communication. *See* Keane Decl. ¶¶ 16-24, attached herein as Exhibit B.

As a result, on June 30, 2025, Defendant was forced to file a motion to dismiss *Ribas 2*, which to date Plaintiff still has not responded to. In August 2025, Judge Perry ordered the parties

---

[1] Notably, Plaintiff's counsel did not file his Motion to Enforce Settlement under seal thereby breaching the confidentiality provision of the MOU. See Exh. A, ¶ 5.
[2] Defendant even acknowledged to this Court that, "given the past difficulties between the Parties, including the complicated nature of some of the provisions in the proposed Settlement Agreement, it is possible that the Parties ***could be back before this Court in the future on this matter***." *See* ECF No. 45.
[3] In fact, the causes of action included in *Ribas 2* were not only resolved in the MOU, but should have been brought in *Ribas 1*, as Plaintiff sent a cease-and-desist letter to Defendant on February 21, 2024, outlining all of the claims and issues that he planned to assert against Defendant, which are reflected in *Ribas 1* and *Ribas 2*. As such, Plaintiff clearly knew about the claims in *Ribas 2* when he filed *Ribas 1* but chose not to bring them until after *Ribas 1*.

2

to show cause regarding consolidation of *Ribas 1* and *Ribas 2*; Defendant responded timely, while Plaintiff filed late. See *Ribas 2*, ECF No. 13.

Meanwhile, Plaintiff neglected *Ribas 1* until the Court, *sua sponte*, ordered a status conference on August 18, 2025. After the conference, the Court ordered Defendant to file a motion indicating her consent to additional mediation, or, in the alternative, inviting Defendant to file a motion for sanctions or other relief.

Defendant does not believe additional mediation is proper or fruitful at this point. As such, Defendant now submits this motion and respectfully requests dismissal with prejudice, an award of attorney's fees, or alternatively, other relief including dismissal without prejudice subject to conditions, enforcement of the MOU, or an order directing the cost of any further mediation to Plaintiff.

### A. The Memorandum of Understanding

At mediation on December 11, 2024, the parties agreed to resolve all of their disputes. *See* ECF No. 38. That day, Defendant's counsel produced and circulated a Memorandum of Understanding (the "MOU") to Plaintiff and the neutral. *See* Exh. A. The MOU describes the material terms agreed to at mediation. *Id.*; Keane Decl. ¶ 4.

Plaintiff never challenged, objected to, or questioned the MOU, its terms, or the language used therein, nor did the neutral. *See* Exh. A. Instead, Plaintiff agreed to draft those terms into a settlement agreement. Keane Decl. ¶ 7.

On January 16, 2025, Defendant requested Plaintiff's draft of the settlement agreement. Keane Decl. ¶ 8. Later that day, Plaintiff provided his draft to Defendant. *Id*. Plaintiff's draft contained several new material and substantive terms that were never agreed to at mediation including ███████████████████████████████████. *See* Defendant's redlines to Plaintiff's Draft Settlement Agreement, attached hereto as <u>Exhibit C</u>. Moreover, ███████████████

3

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████

On January 28, 2025, Defendant revised Plaintiff's draft to ████████████████

████████████████████████████████████████████████████████ After sending those revisions to Plaintiff, Defense counsel and Plaintiff's counsel had a lengthy phone conference in which the parties agreed to submit a Joint Motion for extension to file settlement documents. *See* ECF No. 41; Keane Decl. ¶ 10. Plaintiff then filed a motion to enforce settlement asking this Court that the parties return to mediation. *See* ECF No. 43. The Court agreed and ultimately ordered the parties to return to mediation. *See* ECF Order 46.

Tellingly, the very same day the Court ordered the parties back to mediation, Plaintiff filed *Ribas 2,* and then *Ribas 1* came to a screeching halt. Since *Ribas 2* was filed, Defendant has made multiple attempts to schedule mediation in compliance with the Court's order, but Plaintiff has failed to provide availability or otherwise engage in the process at all. Keane Decl. ¶¶ 15-24. Thus, this motion follows.

II. ARGUMENT

A. The Court Should Dismiss This Case with Prejudice

"Justice delayed is justice denied" is not mere rhetoric, but a fundamental principle embedded in the Federal Rules of Civil Procedure. Rule 1 guarantees litigants a "just, speedy, and inexpensive determination[s]" of disputes. Fed. R. Civ. P. Rule 1. Yet, by failing to prosecute, Plaintiff deprives Defendant of that right. Defendant should not bear the prejudice of Plaintiff's delays, inaction, and needless increase of litigation costs. Thus, Defendant respectfully moves this Court to dismiss Plaintiff's claims under Fed. R. Civ. P. 41(b).

   1. *Standard for Dismissal Under Fed. R. Civ. P. 41(b)*

The Federal Rules permit "dismissal with prejudice for failure to prosecute or comply with these rules or any order of court." *Hunt v. City of Minneapolis*, 203 F.3d 524, 527 (8th Cir. 1999), citing Fed. R. Civ. P. 41(b) (internal quotations omitted). Generally, dismissals under Rule 41(b) operate as adjudications on merits, (*see* Fed. R. Civ. P. 41(b)), and should be reserved for "willful disobedience of a court **or** where a litigant exhibits a pattern of intentional delay." *Hunt* 203 F.3d at 527 (emphasis added); citing *Hutchins v. A.G. Edwards & Sons, Inc.*, 116 F.3d 1256, 1260 (8th Cir. 1997); (see also *Arnold v. ADT Sec. Servs., Inc.*, 627 F.3d 716, 722 (8th Cir. 2010) (affirming Rule 41(b) dismissal for plaintiff's "persistent pattern of delay and failure to comply with the district court's orders"). The District Court need not find Plaintiff acted in bad faith. *Hunt*, 203 F.3d at 527.

The excuses in this case have been plentiful. Yet, the 8th Circuit has found that such excuses carry little weight. For example, counsel being overburdened or confused by simultaneous participation in state and federal cases "cannot be deemed valid, lest the courts be rendered unable to enforce any orders or procedural rules." *Hunt*, 203 F.3d at 528 n.3 (collecting cases rejecting excuses such as attorney carelessness and attorney's busy law practice).

   2. *Plaintiff's Exhibited Pattern of Intentional Delay Warrants Dismissal*

This case is on a slow-moving train to nowhere. Following the Court's order to return to mediation, the wheels of these proceedings have not only ground to a complete halt, but the wheels have quickly begun to rust.

From the outset, Plaintiff demonstrated little interest in a speedy resolution of *Ribas 1*. Plaintiff filed for extension after extension; each one further stalling and prolonging these proceedings. Plaintiff sought extensions of nearly every deadline imposed by the Court. In fact,

5

Plaintiff has filed six (6) unilateral motions for extensions of time in a case where there has been practically no discovery. See generally *Ribas 1*. Whenever Plaintiff is faced with a deadline, he moves for an extension of time, typically occurring only one day prior to such deadline.[4] *See* ECF Nos. 14, 20, 25, 28. Per *Hunt*, Plaintiff's excuses cannot be deemed valid. 203 F.3d at 528.

Plaintiff's persistent pattern of delay and disregard for this Court's Orders is not only evident—it is telling. As of February 14, 2025, Plaintiff acknowledged that ████████████ ████████████████████████████████████████████████████ ███████████████████████████████████ Yet, when the Court ordered further mediation on February 27, 2025, Plaintiff instead filed *Ribas 2* against Defendant.

*Ribas 2* is wholly without merit. The claims asserted therein were not only conclusively resolved under the MOU, but they should have been asserted in *Ribas 1*. See *Jordan v. Kansas City*, 929 S.W.2d 882, 885 (Mo. App. W.D. 1996) (holding that the doctrine of res judicata prevents a party from relitigating in a subsequent proceeding, claims that were, or should have been, litigated in a prior action) (emphasis added). Indeed, Judge Perry ordered Plaintiff to show cause as to why these suits should not be consolidated. *Ribas 2*, ECF Order 11. Once again, however, Plaintiff disregarded the Court's deadline and filed his response out of time and without leave of Court. *Ribas 2*, ECF No. 13.

Rather than addressing the sole remaining issue with efficiency, Plaintiff seeks to re-start this entire litigation. It is as if Plaintiff was keeping *Ribas 2* in his back pocket for later; like trying to add pieces to a chess board after the match has already started and ended. This maneuver not only underscores Plaintiff's intent to cause delay, but also prejudices Defendant by injecting

---

[4] In some cases, Plaintiff filed such extension *after* the original deadline had passed.

additional claims to use as leverage in Plaintiff's apparent attempt to further harass Defendant, drive up the litigation costs, and renegotiate this matter's resolution.

Although the Court need not find that Plaintiff acted with bad faith, here, such a conclusion may be warranted. While Plaintiff attempted to effectuate service in *Ribas 2*, Defendant remained committed to resolving *Ribas 1*. In March 2025, Defendant engaged with Plaintiff and the neutral about available dates to schedule mediation. *See* Keane Decl. ¶ 16. Ten days later, Plaintiff stated he was unavailable – without offering alternative dates. Keane Decl. ¶ 17. From March through June 2025, Defendant sent multiple emails to Plaintiff asking for his availability to schedule the mediation. Keane Decl. ¶¶ 16-23.

Plaintiff has never provided his availability for returning to mediation as ordered by this Court. Despite Defendant's requests—and despite this redundant mediation being (1) Court-ordered, (2) initiated at Plaintiff's suggestion, (3) intended to resolve a dispute of Plaintiff's own making, (4) centered on language Plaintiff previously accepted without objection, and (5) language Plaintiff expressly agreed to formalize in a settlement agreement—Plaintiff has continued to obstruct progress and prevent resolution.

Nothing excuses Plaintiff's utter disregard of *Ribas 1* and this Court's Orders for six months—especially where Plaintiff took the time to file *Ribas 2* (especially after he informed defense counsel he would not file *Ribas 2*). See Keane Decl ¶12. Plaintiff's persistent conduct manifests intent to delay and demonstrates Plaintiff's willful disobedience to Court Rules and Orders. Thus, dismissal is not only warranted under Fed. R. Civ. P. 41(b) but is crucial to afford Defendant a speedy disposition of these claims—a right which Plaintiff has robbed her of.

### 3. Defendant is Entitled to Attorney's Fees

This Court has authority and discretion to impose additional, appropriate, sanctions. Rule 11 permits certain sanctions for various types of violations, including:

7

> (1) *In General.* . . . the court may impose an appropriate sanction on any attorney, law firm, or party. . . .
> (2) *Motion for Sanctions.* . . . If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion. . . . .
> (4) *Nature of a Sanction.* A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct to others similarly situated. **The sanction may include nonmonetary directives; an order to pay a penalty into court; or . . . an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.**

*See* Fed. R. Civ. P. Rule 11(c) (emphasis added).

Federal statute also permits sanctions where:

> "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

*See* 28 U.S.C. § 1927.

This Court is not limited by these rules but has inherent authority to sanction bad-faith conduct "when the party's conduct is not within the reach of the rule or the statute." *Chambers v. NASCO, Inc.* 501 U.S. 32, 42 (1991) (quoting *CASCO, Inc. v. Calcasieu Television & Radio, Inc.,* 894 F.2d. 696, at 702-703 (5th Cir. 1990)). The Court's power to "punish for contempts is inherent…" and may be exercised over "both conduct before the court and that beyond the court's confines." *Chambers* 501 U.S. at 44 (citing *Ex Parte Robinson,* 86 U.S. 505, 510 (1873)). In its vast discretion, the Court may "fashion an appropriate sanction for conduct which abuses the judicial process," and although "outright dismissal of a lawsuit. . . is a particularly severe sanction," such power is well "within the court's discretion." *Chambers*, 501 U.S. at 45-6 (quoting *Roadway Express Inc. v. Piper,* 447 U.S. 752, 765 (1980)).

On February 27, 2025, this Court ordered the parties back to mediation. *See* ECF 46. Instead, on the same day, Plaintiff's counsel filed *Ribas 2* in state court. *Ribas 2* was resolved by

8

the parties during mediation on December 11, 2024. See Exh. A, ¶ 7. Moreover, Plaintiff knew of the issues in *Ribas 2*, before he filed *Ribas 1*. *See supra* fn. 3. Instead, Plaintiff intentionally waited to file *Ribas 2* until after a resolution was reached in *Ribas 1*.

Plaintiff's willful and intentional conduct ignores the Rules and Orders of this Court. Meanwhile, Defendant has been unable to perform her obligations to the Court in *Ribas 1* due solely to Plaintiff's inaction. Crucially, Defense counsel has incurred 43.5 hours of attorney time which has included reviewing the second lawsuit, *Ribas* 2; removing it to federal court; preparing and filing a motion to dismiss *Ribas 2*; responding to a show cause order in *Ribas 2*; communicating with the client about all of these issues; and preparing this motion herein. See Keane Decl. ¶ 25. The Court in its discretion to fashion appropriate sanctions should dismiss this action with prejudice in accordance with Rule 41(b) and award Defendant's attorney's fees.

### B.  In the Alternative, Defendant Requests Dismissal Without Prejudice and an Order Requiring Plaintiff to Show Cause Before Any Refiling

If the Court is not inclined to dismiss with prejudice, Defendant submits dismissal without prejudice should—at minimum—be conditioned upon Plaintiff demonstrating good cause before refiling any related claims.

From February 27, 2025, until August 18, 2025, there was *zero* activity in *Ribas 1*. *See* ECF Nos. 46, 47. Accordingly, E.D. Mo. L.R. 8.01 states:

> If a civil case has been pending for six (6) months without any action, the Court may order the appropriate party to show cause why its claims should not be dismissed for failure to prosecute. Absent a showing of good cause, the Court may dismiss the claims with or without prejudice.

*See also* Fed. R. Civ. P. 41.

Therefore, Plaintiff's action should be dismissed. Additionally, Plaintiff should be required to show good cause before it is permitted to refile—if at all—pursuant to Local Rule 8.01.

9

C. **The Court Should Enforce the Settlement Agreement as Written**

If the Court declines to order any dismissal, Defendant prays it will enforce the settlement reached at mediation on December 11, 2024, as described within the MOU. *See* Exh. A.

Missouri public policy favors settlement of litigation, thus courts will generally enforce settlement agreements when warranted. *See e.g.*, *Andes v. Albano*, 853 S.W.2d 936, 940 (Mo. banc 1993). Courts have found that settlement memorandums of understanding are legally enforceable. *Woodson v. Bank of Am., N.A.*, 602 S.W.3d 316, 323-4 (Mo. Ct. App. 2020) (holding that a 10-paragraph memorandum bearing the terms of settlement the parties had negotiated readily satisfied contract law principles and was enforceable).

Here, the MOU is enforceable. *See* Exh. A. The terms of the agreement were sufficiently definite, specific as to the mutual obligations of the parties, and reflects the parties' intent to fully compromise their dispute. *Woodson*, 602 S.W.3d at 324. First, the MOU contained the following provision: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Additionally, as agreed, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The parties ███████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████

If the ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████

This dispute settled at mediation. The MOU is enforceable. Thus, this Court should deny Plaintiff such an opportunity to re-negotiate and instead enforce the settlement described in the MOU.

**D. If the Court Orders the Parties Back to Mediation for a Third Time, Plaintiff Should Bear All Costs**

If the Court is not satisfied with the options above, and inclined to send this case back to mediation, Plaintiff should bear that cost. Again, the Court may fashion an appropriate sanction here, including awarding attorney's fees and costs reasonably incurred as a direct result of the violation(s). *See* Fed. R. Civ. P. Rule 11(c); *also* 28 U.S.C. § 1927.

Defendant exhausted her efforts to schedule a second mediation only to be thwarted by Plaintiff. When the sole dispute was over settlement agreement language, Defendant agreed to return to mediation. See *Ribas 1,* ECF No. 45. Yet, Plaintiff prevented scheduling. Now, by filing *Ribas 2*, Plaintiff has needlessly prolonged this dispute between parties, breached the memorandum of understanding, and wasted the resources of the parties and the Court. One could find this is tantamount to abuse of process. Instead, Defendant prays this Court dismiss this case and enter appropriate sanctions as it finds just and proper.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court:

1. Dismiss Plaintiff's claims with prejudice;
2. Award attorney's fees;
3. Or in the alternative, impose the conditions and relief outlined above; and
4. Grant such other and further relief as the Court deems just and proper.

Dated: September 15, 2025                     Respectfully submitted,

                                              KEANE LAW LLC

                                        By:   */s/ Ryan A. Keane*
                                              Ryan A. Keane, #62112MO
                                              7711 Bonhomme Ave, Suite 600
                                              St. Louis, MO 63105
                                              Phone: (314) 391-4700
                                              Fax: (314) 244-3778
                                              ryan@keanelawllc.com

                                              *Attorney for Defendant Besler*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 15, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the attorneys of record.

                                                                */s/ Ryan A. Keane*