UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| VICTOR MANUEL RIBAS, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Case No. 4:24-cv-00632-SPM |
| MEGAN BESLER, | ) ) ) ) |
| Defendant. | ) ) ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT MEGAN BESLER'S MOTION FOR MISCELLANEOUS RELIEF AND/OR SANCTIONS**

**INTRODUCTION**

Defendant seeks sanctions and alternative relief in this matter. Sanctions are not warranted as the record does not support them. The Court should however enforce the settlement of the parties which was reached in mediation either by sending the matter back to mediation or enforcing the settlement as the record before the Court enables and authorizes such enforcement.

The parties were ordered to mediation by this Court and did mediate the case before the Honorable Thomas J. Prebil the case on December 11, 2024. The parties did resolve the matter in mediation but have not been able to reduce the matter to a written settlement because of an impasse in the understanding of the agreed liquidated damages provision of the settlement.

**SUMMARY OF RELEVANT EVENTS**

After the December 11, 2024 mediation, the parties attempted to draft a settlement agreement but ultimately reached an impasse because Plaintiff objected

1

to the mutuality of the liquidated damages provision which Defendant added to Plaintiff's initial draft of the settlement agreement.

As per the memorandum of understanding email drafted by Defendant's counsel on December 11, 2024 and attached to his Memorandum as Exhibit A, Defendant agreed (1) to pay Plaintiff $5,000.00 over two years for the monetary portion of the settlement; (2) to a mutual non-disparagement provision; (3) that Defendant would remove the defamatory material she had posted on the internet regarding Plaintiff (explicitly or by reasonable inference) and take the posts down; (4) that there would be a liquidated damages clause of $5,000.00 for further disparagement; (5) that the agreement would be confidential; (6) that the parties would prepare a mutually agreeable settlement and release within 60 days of December 11, 2024; (7) that the parties would release all further claims between them; and (8) that Plaintiff would dismiss his lawsuit without prejudice.

Plaintiff thereafter prepared a draft and circulated it to Defendant who in turn redrafted the matter and returned it to Plaintiff's counsel. A dispute arose between the Plaintiff and the Defendant as to whether the liquidated damages clause applied to both the Plaintiff and the Defendant or whether it was unilateral (applying only to the Defendant). Plaintiff's position was and is that the liquidated damages clause applied only to the Defendant because Plaintiff was in fact the only party to make affirmative claims in this matter. Defendant never filed a counter-claim nor has there been any evidence or allegation that Plaintiff defamed or otherwise damaged Defendant. As a consequence, there was no cause for the liquidated damages clause to be a bilateral provision of the settlement agreement.

2

Defendant insisted that the liquidated damages clause of the settlement agreement be mutual. The inability to surmount this detail has left the parties in the position they are in to this day.

The reason for the lack of clarity is that the parties did agree, as parties generally do, to a mutual non-disparagement clause as part of the mediated settlement. In the undersigned's experience, that sort of clause exists in virtually all settlement agreements. In this defamation lawsuit, the nature of the claim is, of course, disparagement. Plaintiff did not agree though to the mutuality of the liquidated damages clause of the agreement wherein Defendant would pay Plaintiff for further defamatory remarks a liquidated amount of $5,000.00 per defamatory statement. Mutuality of the liquidated damages clause never came up in the mediation because Plaintiff never defamed Defendant nor was there any allegation, counter-claim or evidence that Plaintiff ever wrote anything defamatory about Defendant on the internet because Plaintiff has never done so.

In addition, during the mediation, Plaintiff and Defendant discussed an unrelated claim between Defendant and Plaintiff which is the topic of another lawsuit now pending in this Court. *Ribas v. Besler,* 4:25-cv-00570-CDP (*Ribas v. Besler 2*), involves allegations that in 2023 Defendant illicitly gained access to Plaintiff's electronic Facebook, Instagram and Tik Toc accounts, surreptitiously pretended to be Plaintiff and also adulterated those accounts. The allegations in *Ribas v. Besler 2* are wholly distinct from this defamation case. There are no common facts even though the parties are identical. The conduct alleged in the two lawsuits did not even occur in the same year. It was the intention of the parties to

3

settle those claims as part of the settlement of this case. However, when this case did not settle, it was necessary to file *Ribas v. Besler 2* out of a concern that a potentially applicable statute of limitations would lapse and that some of the identity theft committed by the Defendant against Plaintiff would be time barred. So, that matter was filed by Plaintiff in April 2025 and removed to federal court by Defendant. Defendant maintains that the cases should be consolidated, and Plaintiff has the opposite stance because there are no common facts between the two lawsuits.

The parties were not able to schedule a further mediation with Judge Prebil and the matter sat in its current procedural posture until the Court, on its own motion, set this matter for a status conference on August 18, 2025 at which point the parties met with the Court. In the conference, Plaintiff suggested that the parties redouble their efforts to work out the matter of the mutuality of the liquidated damages provision, and Defendant's counsel was non-committal eventually choosing to pursue the instant miscellaneous relief/sanctions motion.

During the August 18, 2025 Court conference, the issue of the undersign's responsiveness to email correspondence in April and May of 2025 was broached. As it so happened, the undersigned developed a heart condition (atrial fibrillation with associated tachycardia) which, in hindsight, impacted his responsiveness. Basically, the undersigned required heart surgery and was rehabbing during this time period, and his energy level was substantially impacted. Defendant's counsel conceded that he was aware of this, and the undersigned has made no secret of it in any of his many active litigation cases. The undersigned has put this behind him with

4

successful surgery and working very hard at rehab but, as much as the undersigned would rather not make excuses, ever, this background fact is part of this case.

But, the fact that the undersigned filed *Ribas v. Besler 2* during his period of cardiac rehabilitation to preserve that limitation period, does not mean that the undersigned was functioning at 100% which he was not.

From February 27, 2025 until the Court, on its own Motion on August 11, 2025, called a conference, Defendant's counsel did not make any movement forward to either advance the litigation or dispositively resolve it either.

**REMEDY**

Plaintiff suggests that the parties redouble their efforts to return to mediation but is prepared to enter an amended scheduling order and continue the prosecution this case. The parties were in a relationship, and the parties' mediation moved slowly as a result of the very personal nature of this litigation. Suits such as this one often require trial to resolve.

Defendant has not been prejudiced by the passage of time since the parties mediated this case. Other than the ill-fated preparation of one document – the mutual release which Defendant has attached to his Memorandum as Exhibit C, Defendant has not invested any resources into this matter since the mediation. Civil litigation often takes a long time, sometimes years, to resolve, and the mere passing of time is not a basis to impose sanctions absent some type of affirmative misconduct or deliberate protracted non-feasance by one party neither of which are not present here.

5

**REMEDIES**

As per his position at the August 18, 2025 Court conference, Plaintiff requests that the parties return to mediation with Judge Prebil to work out the dispute. Plaintiff posits that the solution to the impasse between the partes may lie in Judge Prebil's notes and/or in his counsel on the matter. In advance of the mediation, the parties could supply Judge Prebil with Defendant's Exhibit C and he could compare it to his mediation notes and impressions.

As the next alternative, Plaintiff requests that the Court enforce the settlement. The Court has possession of the Memorandum of Understanding Drafted by Defense Counsel on December 11, 2024, Defendant's Exhibit A, as well as the Proposed Settlement Agreement and Release, Defendant's Exhibit C, which was drafted by Plaintiff's Counsel (black text) and redlined by Defense Counsel (red text). In addition to the arguments made by the parties, the Court can draw reasonable conclusions as to the intentions of the parties and enforce the settlement. Further, per *Bath Junkie Branson, LLC v. Bath Junkie, Inc.*, 528 F.3d 556, 560-63 (8th Cir. 2008), the District Court can enforce the settlement with or without an evidentiary hearing. *Bath Junkie* upheld the District Court's enforcement of the terms of a settlement without an evidentiary hearing, finding no abuse of discretion where the terms were unambiguous and supported by the record. *Id. Bath Junkie* also discusses the nature and authority of the District Court to enforce settlements. *Id.*

In this case, the settlement agreement can be enforced because the elements of a valid contract can be discerned from the record before the Court. The parties

6

and attorneys believed the matter was settled the day they left mediation with Judge Prebil, and the settlement only later came into doubt when defense counsel sought a bilateral extension of the unilateral liquidated damages provision in the absence of any evidence or allegations of wrongdoing by Plaintiff or discussion of Plaintiff be obligated to affirmative relief in the mediation.

### *Ribas v. Besler 2*

If the Court decides to enforce the settlement, Plaintiff contingently agrees to dismiss with prejudice *Ribas v. Besler 2* now pending in front of Judge Perry. It was contemplated that *Ribas 2* claims would be resolved in the mediation. This contingent stipulation in no way is a concession that *Ribas 2* is factually related to this lawsuit, because it is not, but, as a practical matter, in the interests of settling the claims between these parties once and for all, *Ribas 2* should and would be resolved by enforcement as was contemplated by the parties in this mediation.

### CONCLUSION.

Based on the foregoing, Plaintiff requests that the Court deny the sanctions requested by Defendant because there is nothing which would justify them, that the parties be ordered to return to mediation or that the Court resolve the dispute by enforcing the settlement which can be discerned from the record before the Court and for such further relief as is warranted.

7

**GOLDSON HOEKEL, LLC**
/s/ Marshall R. Hoekel
Marshall R. Hoekel, #40396MO
mhoekel@gmail.com
5 Plant Ave., Ste. 2
Webster Groves, MO 63119
(314) 961-6917 – Office
(314) 961-6965 – Facsimile
(314) 560-7301 – Cell
*Attorneys for Plaintiff*
*Victor Ribas*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served upon all parties of record by operation of this Court's Electronic Filing System on this 8th day of October 2025.

/s/ Marshall R. Hoekel
