**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VICTOR MANUEL RIBAS, | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 4:24-CV-00632-SPM |
| MEGAN BESLER, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for Sanctions. (ECF No. 60). The motion has been fully briefed. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C.§ 636(c)(1). (ECF No. 15). For the following reasons, the motion will be denied.

I.    **Background**

On December 23, 2024, Plaintiff advised the Court that the parties reached a settlement in this case through alternative dispute resolution. (ECF No. 38). On December 30, 2024, the Court entered an order vacating all deadlines and hearings set in the Case Management Order (ECF No. 22) and directing Plaintiff to file dismissal papers within 30 days. (ECF No. 39). On January 29, 2025, the parties filed a joint motion requesting an additional 21 days to finalize the settlement agreement and file dismissal papers, and the Court granted the request. (ECF Nos. 41, 42).

On February 14, 2025, Plaintiff filed a Motion to Enforce Settlement communicating a disagreement between the parties on the issue of liquidated damages in the settlement agreement and suggesting that the parties confer with their prior mediator, the Honorable Thomas Prebil, to resolve the dispute. (ECF No. 43). Defendant filed a response on February 26, 2025, consenting

to further discussions with the mediator. (ECF No. 45). On February 27, 2025, the Court entered an order denying Plaintiff's Motion to Enforce Settlement, without prejudice, finding the motion premature and moot considering the parties' agreement to attempt to resolve their dispute over settlement terms by conferring with the mediator. (ECF No. 46). The parties did not propose, and the Court did not impose, a deadline by which the parties were to complete their conference with the mediator.

On August 11, 2025, having received no update from the parties regarding the status of this case, the Court set the matter for an attorney's-only status hearing, which took place via Zoom on August 18, 2025. (Docs. 47, 48). At the status hearing, Plaintiff's counsel represented to the Court that the parties remained in dispute over certain details of the settlement agreement and that the parties had not re-engaged with the mediator as contemplated in the Court's February 27, 2025, Order. Plaintiff's counsel explained that a personal medical procedure he underwent led to scheduling disruptions and seemed to attribute the parties' failure to re-engage with the mediator to that procedure. Plaintiff's counsel represented that he has since recovered and requested an additional 30 days for the parties to complete settlement discussions before their prior mediator, Judge Prebil.

Counsel for Defendant disputed Plaintiff's counsel's version of events. Defense counsel represented that, since the Court's February 27 Order, he had contacted Plaintiff's counsel on six occasions to attempt to schedule a time for further discussions in front of Judge Prebil. Defense counsel represented that Plaintiff's counsel made no response to these communications but, instead, filed a new lawsuit in state court on behalf of Plaintiff against Defendant. Defense counsel removed the new state case to this court on April 24, 2025. That case, styled *Ribas v. Besler*, Case No. 4:25-cv-00570-CDP, is currently pending before U.S. District Judge Catherine D. Perry. Defense counsel represented, and a review of the case docket confirms, that he has filed a motion

to dismiss the new lawsuit, in part, on grounds that it is barred by the parties' prior settlement in this case. Judge Perry has not ruled on Defendant's motion.

Neither attorney explained why they failed to advise the Court of these developments after representing, in February, that both parties intended to re-engage with the mediator to resolve what appeared to be a relatively narrow dispute in an otherwise negotiated settlement agreement. Notwithstanding the parties' failure to justify a nearly six-month delay of this case, on August 19, 2025, the Court directed Defendant to either (i) consent to re-engaging with the mediator to resolve the parties' dispute or, if not consenting to re-engaging with the mediator, (ii) instead file a motion seeking other relief from the Court. (ECF No. 49).

On September 25, 2025, Defendant filed the instant motion for miscellaneous relief and/or sanctions, requesting dismissal of the case with prejudice under Federal Rule of Civil Procedure 41(b) and that Defendant be awarded attorney's fees. In the alternative, Defendant seeks (i) dismissal of the case with or without prejudice, (ii) enforcement of the parties' memorandum of understanding, or (iii) an order directing the cost of any further mediation to Plaintiff. In response, Plaintiff argues Defendant is not entitled to the requested relief because the parties had a genuine dispute about the scope of a negotiated liquidated damages provision and the Court should either permit the parties to return to mediation or enforce the settlement in a manner consistent with Plaintiff's interpretation of the scope of liquidated damages negotiated by the parties.

## II.      Discussion

### A.      Rule 41(b) Dismissal for Failure to Prosecute

Under Rule 41(b), the Court may dismiss a case if Plaintiffs "fail[ ] to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order." *See also Holly v. Anderson*, 467 F.3d 1120, 1121 (8th Cir. 2006) ("A district court may *sua sponte* dismiss an action under Rule 41(b) for the plaintiff's deliberate failure to comply with a court order."). The dismissal under this provision is deemed to be an "adjudication on the merits" (i.e., with prejudice), "[u]nless the

dismissal order states otherwise." Fed. R. Civ. P. 41(b). Rule 41(b)'s dismissal "power enables the

district courts to ensure the expeditious handling of cases and to protect the rights of opposing

parties to be free of prejudice caused by a litigant's dilatory conduct." *Hutchins v. A.G. Edwards*

*& Sons, Inc.*, 116 F.3d 1256, 1260 (8th Cir. 1997).

To determine whether dismissal is appropriate, the Court "employs a balancing test that

focuses foremost upon the degree of egregious conduct which prompted the order of dismissal and

to a lesser extent upon the adverse impact of such conduct upon both the defendant and the

administration of justice in the district court." *Rodgers v. Curators of Univ. of Mo.*, 135 F.3d 1216,

1219 (8th Cir. 1998) (citation modified). The Eighth Circuit has warned that the "sanction imposed

by the district court must be *proportionate* to [Plaintiffs'] transgression[s], and that dismissal with

prejudice is an extreme sanction and should be used only in cases of willful disobedience of a court

order or continued or persistent failure to prosecute a complaint." *Smith v. Gold Dust Casino*, 526

F.3d 402, 405 (8th Cir. 2008) (citation modified and emphasis in original).

In this case, the "egregious conduct" Defendant accuses Plaintiff of engaging in is failure

to prosecute this action in good faith, first, by ignoring defense counsel's attempts to comply with

the Court's February 27th Order directing the parties to re-engage in settlement discussions with

Judge Prebil and, second, by filing a new lawsuit in state court on behalf of Plaintiff against

Defendant. However, as noted above, Plaintiff's counsel explained that a personal medical

procedure he underwent led to scheduling disruptions—a fact that was not disputed by defense

counsel. Although counsel's medical procedure does not explain away all of the delay (for

example, counsel filed a new lawsuit during this same timeframe), based on the limited record

before it, this Court cannot say that Plaintiff's counsel engaged in deliberate delay or deliberately

ignored a Court order to re-engage with the mediator.

Defendant also argues Plaintiff's bad faith failure to prosecute is evident by his attempt to

unilaterally change the material terms of the parties' settlement as represented by an enforceable

memorandum of understanding ("MOU"); his repeated breach of the confidentiality provision of the MOU by failing to file MOU-related content under seal; and his multiple motions for extensions of time. However, Defendant has failed to explain how this alleged conduct by Plaintiff translates into deliberate violation of an order of this Court or a deliberate delay of the prosecution of this case. As noted above, "a litigant's *dilatory conduct*" is the focus of Rule 41(b)'s dismissal power for an alleged failure to prosecute. *See Hutchins,* 116 F.3d at 1260 (emphasis added). The Court need not find that Plaintiff "acted in bad faith, only that [he] acted intentionally as opposed to accidentally or involuntarily," *Rodgers*, 135 F.3d at 1219, when he "continued or persistent[ly] fail[ed] to prosecute a complaint." *See Smith,* 526 F.3d at 405 (discussing standard for a Rule 41(b) dismissal with prejudice) (citation modified).

Defendant has not shown either that delay in this case can be attributed solely to Plaintiff, or that Plaintiff has *deliberately* disobeyed a court order. Defendant asserts that Plaintiff neglected this action, but Defendant also allowed this action to sit idle for nearly six months. The Court acknowledges that its February 27 Order did not impose a deadline by which the parties were to complete negotiations in front of Judge Prebil, but Defendant made no filings—or other communications—to alert the Court that Plaintiff's counsel was thwarting Defendant's efforts to schedule time with the mediator by failing to respond to emails and/or phone calls. The Court was unaware that the parties had not returned to the mediator until, six months later, it *sua sponte* ordered the parties to update the Court at a case status hearing. While the Court is troubled by the evident breakdown in communication between the parties following the February 27 Order, Defendant has not pointed to actions by Plaintiff demonstrating either a *pattern* or *persistent* failure to prosecute this action. The Court disagrees with Defendant that Plaintiff's various requests for deadline extensions constitute such evidence.

Defendant alternatively asks the Court to dismiss the case without prejudice. The Court doubts dismissal would be appropriate in this case even if the conduct relied on by Defendant

constituted a deliberate violation of the Court's February 27 Order by Plaintiff that resulted in delay of this case. The Eighth Circuit has cautioned courts to "first consider whether any less-severe sanction could adequately remedy the effect of the delay on the [C]ourt and the prejudice to the opposing party." *Smith*, 526 F.3d at 406 (internal quotation marks omitted); *see also Keefer v. Provident Life and Acc. Ins. Co.,* 238 F.3d 937, 941 (8th Cir. 2000) ("[B]efore imposing the sanction of dismissal, fairness requires a court to consider whether a lesser sanction is available or appropriate."). While it is not required, courts are also cautioned to warn Plaintiffs that they are "skating on the thin ice of dismissal" before dismissing a case under Rule 41(b). *Rodgers*, 135 F.3d at 1221. As noted above, Defendant has not previously brought the issue of Plaintiff's dilatory behavior before the Court, and the Court declines to exercise the "extreme sanction" of dismissal in the first instance. *Smith,* 526 F.3d at 405. The Court reiterates that Defendant also prevented the speedy disposition of this case by failing to take any further action with the Court for almost six months.

Accordingly, the Court will deny Defendant's request for dismissal under Rule 41(b).

### B. Enforcement of the MOU

An alternative request from Defendant is the Court's enforcement of the parties' MOU. Defendant cites state case law favoring litigation settlements and holding certain MOUs to be legally enforceable, but Defendant presents no authority suggesting that the Court's sanction powers are a permissible or appropriate means for settlement enforcement.[1]

The parties' settlement dispute centers on the liquidated damages provision. Defendant insists that the mutual obligations of this provision are self-evident, given that such damages flow from violation of the MOU's mutual non-disparagement provision. Plaintiff responds that he plainly intended for the liquidated damages provision to apply only to Defendant because there are

---

[1] Although Plaintiff also has requested enforcement of the MOU in his opposition to Defendant's motion for sanctions, Plaintiff has not filed a motion for such action by the Court.

no allegations in the action that Plaintiff has *previously* disparaged Defendant such that damages

for further disparagement would apply. It appears to the Court—without making any findings

regarding the MOU itself— that the parties' filings display a genuine dispute regarding the scope

of the liquidated damages provision. Enforcement (and interpretation) of the MOU constitutes a

separate legal action from the imposition of sanctions and is more appropriately addressed through

dedicated briefing on a motion for such action. *See, e.g., Morris v. City of St. Louis, Missouri*, No.

4:23-CV-39 RLW, 2024 WL 1655407, at *2-3 (E.D. Mo. Apr. 17, 2024) (discussing different

standards for a motion to enforce a settlement and a motion for sanctions).  The parties formerly

agreed to return to mediation for what currently presents as a genuine settlement dispute, and the

Court concurs that this is the most efficient solution.

### C. Attorney's Fees

Finally, Defendant requests that the Court grant her an award of attorney's fees and costs

for any further mediation.[2] The Court has the inherent authority to "fashion an

appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co.

v. Haeger*, 581 U.S. 101, 107, (2017) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45

(1991)). "[O]utright dismissal of a lawsuit . . . is a particularly severe sanction, yet is within the

court's discretion. Consequently, the less severe sanction of an assessment of attorney's fees is

undoubtedly within a court's inherent power as well." *Chambers*, 501 U.S. at 45 (citation

modified). The Court "may assess attorney's fees when a party has acted in bad faith, vexatiously,

wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45-46 (citation modified). "A bad

faith finding is specifically required in order to assess attorneys fees." *Gas Aggregation Servs.,

Inc. v. Howard Avista Energy, LLC*, 458 F.3d 733, 739 (8th Cir. 2006). Attorney's fees must be

---

[2] Defendant also has requested attorney's fees in the event of dismissal with prejudice under Rule 41(b). Because the Court is declining Rule 41(b) dismissal at this time, it need not take up the issue of attorney's fees in that context.

limited to those that "would not have been incurred in the absence of the sanctioned conduct." *Goodyear Tire & Rubber Co.,* 581 U.S. at 110.

The Court does not find the sanctions requested by Defendant to be warranted at this time. There is insufficient information before the Court to find bad faith (or lack thereof) in the parties' settlement negotiations and the second lawsuit between the parties. According to Defendant, Plaintiff attempted to *change* material terms of the parties' negotiated settlement—namely, to make liquidated damages for future disparagement solely Defendant's obligation, as opposed to a mutual obligation—in his revisions to the draft agreement. When a dispute between the parties resulted, Plaintiff then filed the second lawsuit for claims which, in Defendant's view, properly belong in the present action and were within the purview of the parties' binding MOU. Defendant accuses Plaintiff of "keeping [the second lawsuit] in his back pocket for later[,] like trying to add pieces to a chess board after the match has already started and ended" and using the second action "as leverage in Plaintiff's apparent attempt to further harass Defendant, drive up the litigation costs, and renegotiate this matter's resolution." (ECF No. 60-1 at 6-7).

Plaintiff counters that the competing settlement drafts exposed a genuine misunderstanding between the parties on an issue that had not been discussed, nor agreed to, during negotiations. While she concedes that both parties intended for the settlement agreement to include the claims in her second lawsuit, Plaintiff maintains that the claims in the two lawsuits share no common facts and need not be prosecuted in the same action. Plaintiff explains that the second lawsuit was an attempt to preserve her claims when, in her view, Defendant sought to expand the scope of the liquidated damages provision, introduced a dispute, and thereby brought into question the status of the settlement.

The Court acknowledges Defendant's fruitless attempts to schedule mediation and understands Defendant's skepticism about Plaintiff's explanations pertaining to both the unscheduled mediation and the second lawsuit. The Court agrees that if Plaintiff's counsel

deliberately evaded returning to mediation to buy time to file a new lawsuit, such conduct would constitute bad faith. However, the record is not sufficiently developed to make such a finding and, for the reasons explained above, the Court is not taking up the issues of interpreting and enforcing the MOU in the context of Defendant's present motion for sanctions.  Nor have the parties called on this Court to consider the appropriateness of consolidating the two actions. The Court is therefore not currently positioned to evaluate, for example, whether either party's arguments concerning the liquidated damages provision have a reasonable (as opposed to pretextual) basis, or whether the claims in the two actions are so interrelated that Plaintiff clearly filed an improper suit to harass Defendant. If it later appears that Plaintiff has, in bad faith, attempted to use the second lawsuit against Defendant as some form of leverage in a settlement dispute, the Court may return to the question of sanctions at such time.

The parties are directed to return to mediation, with set deadlines to ensure that this action moves forward.  The Court continues to encourage the parties to attempt a good faith resolution of their settlement disputes with Judge Prebil.

**IT IS HEREBY ORDERED** that Defendant's Motion for Sanctions (ECF No. 60) is **DENIED**.

**IT IS FURTHER ORDERED** that, the Order Referring Case to Alternative Dispute Resolution (Doc. 23) is amended as follows: the ADR conference(s) before the parties' designated neutral, Judge Prebil, shall be concluded no later than March 9, 2026, unless extended by order of the Court.  All other terms and deadlines remain in effect. Any violation of this Order may result in severe sanctions, up to and including dismissal of this action with prejudice.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated: January 13, 2026.